IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 3 1 2018

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

GREGG WESLEY MACINTOSH,        §
                               §
          Petitioner,          §
                               §
v.                             §      No. 4:16-CV-471-A
                               §
LORIE DAVIS, Director,         §
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
          Respondent.          §

### MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, Gregg Wesley MacIntosh, a
state prisoner incarcerated in the Correctional Institutions
Division of the Texas Department of Criminal Justice (TDCJ),
against Lorie Davis, director of TDCJ, respondent. After having
considered the pleadings, state court records, and relief sought
by petitioner, the court has concluded that the petition should
be denied.

### I.  PROCEDURAL HISTORY

Petitioner was indicted in Tarrant County, Texas, Case No.
1287000D, with continuous sexual abuse of two young girls who
were friends of his daughter Beth.[1] (Clerk's R. 7, doc. 18-11.)
The indictment also included a sexual-offender notice, alleging

---

[1]The pseudonyms for the children used by the state appellate court are
incorporated in this opinion.

that petitioner was placed on deferred adjudication for a prior felony offense of indecency with a child. (*Id.*) On February 17, 2013, a jury found petitioner guilty of the offense and assessed his punishment at life imprisonment. (*Id.* at 163.) The state appellate court summarized the facts of the case as follows:

> Only the State called witnesses during the phase of [petitioner]'s trial in which the jury determined his guilt. The following facts are based on the testimony from those witnesses.
>
> [Petitioner] is the father of Beth and Christopher. While [Petitioner] and his children lived in a four-bedroom house in Arlington, Beth became friends with Cara, who lived next door. Cara often went to Beth's house and spent the night there. Beth and Cara eventually became friends with Danielle, who also regularly went to Beth's house and stayed overnight. All three girls went to school together and were in the same grade.
>
> Although Beth and Christopher had their own rooms, they often slept in other parts of the house, including on a living room couch along with [petitioner]. No one regularly slept in the master bedroom. When Beth's friends stayed overnight, they sometimes fell asleep in one bed located in Beth's room.
>
> Some nights, Christopher would fall asleep on the couch and wake up to find Cara or Danielle lying on the couch with [petitioner] even though they had not been there before he fell asleep. Cara confirmed that several times, she fell asleep in Beth's room and woke up downstairs on the couch, close to [petitioner] and, occasionally, Christopher.
>
> [Petitioner] often took the girls to see horses that he had bought for them, to eat at restaurants, and to play at arcades and amusement parks, where he had bought them season passes. He also gave them money and bought them clothes, electronics, and bicycles. The girls called [petitioner] "Daddy"; Cara testified that [petitioner] had asked her to do so.

One night in February 2012, when Danielle was almost ten years old, she sent a text message to her mother, Lacy. Early the next morning, Lacy went to [petitioner]'s house so that she could take Danielle and Beth to school and talk to them. Danielle told Lacy that [petitioner] had been touching her inappropriately and that this behavior had "been going on for a long time." Specifically, Danielle said that on numerous occasions, [petitioner] had put his hands and his lips on her private parts. Lacy dropped the girls off at school and went to her mother's house; she was shaking, upset, and "just panic stricken." Lacy confronted [petitioner] about what Danielle had said. He "denied it all," begged Lacy to not call the police, and offered to surrender possession of his children to her.

Lacy called the police. Soon thereafter, Cara, Danielle, Christopher, and Beth gave forensic interviews at Alliance for Children, a child advocacy center. At Danielle's and Cara's interviews, they detailed a long pattern of sexual abuse against them by [petitioner]. Danielle went to a medical center for a sexual assault exam and told a nurse that more than once, [petitioner] had touched her genital area and chest with his hands. She also told the nurse that [petitioner] had licked her genital area.

A grand jury indicted [petitioner] with committing the continuous sexual abuse of young children. The indictment alleged that during a period that was thirty or more days in duration (from May 2010 through February 2012), [petitioner] had committed two or more acts of sexual abuse against Danielle and Cara, who were younger than fourteen years old.

. . .

At trial, Danielle and Cara collectively testified that on many occasions, [Petitioner] had touched their bodies, including their private parts, with his hand, tongue, or a vibrator either over or under their clothes.

(Mem. Op. 2-4, doc. 18-3 (footnotes omitted).) The appellate

court affirmed the trial court's judgment and the Texas Court of

Criminal Appeals refused petitioner's petition for discretionary

review. (Id. at 21; Docket Sheet 2, doc. 18-2.) Petitioner also filed a state habeas-corpus application, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (Action Taken, doc. 18-21.) This federal habeas petition followed.

## II. ISSUES

In nine grounds for relief, petitioner raises the following claims:

(1) Texas's continuous-sexual-abuse statute under § 21.02 of the Texas Penal Code violates the constitutional right to a unanimous jury verdict and allows conviction on "less than proof beyond a reasonable doubt of each and every element of the charged offense" (grounds one and two);

(2) He received ineffective assistance of trial counsel (grounds three, four, five, and seven);

(3) The trial court erred in admitting extraneous offense evidence (ground six);

(4) The prosecutor made improper comments to the jury (ground eight); and

(5) The cumulative effect of the combined errors deprived him of a fair trial (ground nine).

(Pet.6-7a, doc. 1.)

## III. RULE 5 STATEMENT

Respondent believes that petitioner has exhausted his state court remedies as to the claims raised and that the petition is neither successive nor barred by the statute of limitations. (Resp't's Ans. 7, doc. 17.)

## IV. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus

application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Harrington*, 562 U.S. at 99;1 *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004).

In this case, the state courts entered express findings of fact relevant to petitioner's claims, which he has failed to rebut with clear and convincing evidence. As such, this court must defer to the state courts' factual findings and, absent any indication to the contrary, may assume the Texas Court of Criminal Appeals applied correct standards of federal law to the facts. With these principles in mind, the court considers petitioner's claims.

### A. Texas Penal Code § 21.02

Petitioner claims § 21.02 of the Texas Penal Code violates the constitutional right to a unanimous jury verdict because it "does not require the jury to be unanimous about a single, discrete act or require the state to allege a particular manner and means, which is a state-created right applicable to all other criminal cases." (Pet. 6, doc. 1.) He also claims that the

statute permits conviction "on less than proof beyond a reasonable doubt of each and every element of the charged crime" because

> [t]he jury was not required to be unanimous in determining which act or acts it believed [he] was guilty of. Because there was no single, discrete incident alleged, there was no act or proof thereof. In short, there was no proof that anything occurred.

(*Id.*)

The state appellate court addressed these claims as follows:

> [Petitioner] contends that section 21.02 of the penal code is unconstitutional and that the trial court therefore erred by denying his motion to quash. Under section 21.02, a person commits an offense if
>
> > (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, [8] regardless of whether the acts of sexual abuse are committed against one or more victims; and
> >
> > (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.
>
> [Petitioner] argues that section 21.02 is unconstitutional because it did not require the jury to unanimously agree on which acts of sexual abuse appellant committed or when he committed them. The legislature has expressly stated that under section 21.02, jurors "are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." Conforming to that legislative intent, Texas courts, including our own, have authoritatively ruled against [petitioner]'s position and upheld section 21.02's federal and state constitutionality.
>
> [Petitioner]'s argument does not persuade us to abandon our precedent . . ., in which we rejected identical contentions. Thus, based on the rationale

expressed in those cases, we hold that [petitioner]'s
prosecution under section 21.02 did not violate his
constitutional right to a unanimous verdict, and we
conclude that the trial court did not err by denying
his motion to quash.

(Mem. Op. 5-7, doc. 1 (footnote and citations omitted).)

To the extent petitioner attempts to raise a claim that §
22.01 violates the Texas Constitution, the claim fails. Federal
habeas relief lies only for violations of the "Constitution or
laws or treaties of the United States." 28 U.S.C. § 2254(a);
*McGuire,* 502 U.S. at 67-68. Under the United States Constitution,
the due process clause requires proof beyond a reasonable doubt
of every fact necessary to constitute the crime with which a
defendant is charged. *See In re Winship,* 397 U.S. 358, 364
(1970). It does not, however, require that juries in state trials
be unanimous. *See Schad v. Arizona,* 501 U.S. 624, 631-32 (1991)
(plurality op.) (providing rule that jurors not required to agree
upon single means of commission of crime applies equally to
contention they must agree on one of alternative means of
satisfying mental state element of crime); *Johnson v. Louisiana,*
406 U.S. 356, 359 (1972) (rejecting due process challenge to 9-3
state jury verdict). If state juries need not be unanimous on the
ultimate question of guilt, it stands to reason that they not be
unanimous on which particular acts constituted the illegal course
of conduct. *See Schad,* 501 U.S. at 631 (stating "[w]e have never
suggested that in returning general verdicts in . . . cases

8

[alleging alternative manner or means of committing an offense] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone"). *See also McElvain v. Davis,* No. No. 4:16-CV-259-O, 2017 WL 6527321, at *5 (N.D.Tex. Dec. 21, 2017) (providing absence of unanimity requirement in Texas's continuing sexual abuse statute does not violate due process), *appeal filed,* No. 18-10045 (5th Cir. Jan. 12, 2018); *Henry v. Stephens,* No. 4:13-CV-985-O, 2014 WL 4744671, at *7 (N.D.Tex. Sep. 23, 2014) (same). The Supreme Court has not created a federal jury unanimity requirement nor has it held that "continuous course of conduct" statutes violate the federal constitution. When there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established law from the Supreme Court. *Carey v. Musladin,* 549 U.S. 70, 77 (2006).

**B. Ineffective Assistance of Counsel**

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish

ineffective assistance of counsel under this standard, a
petitioner must show (1) that counsel's performance fell below an
objective standard of reasonableness, and (2) that but for
counsel's deficient performance the result of the proceeding
would have been different. *Strickland*, 466 U.S. at 688. Both
prongs of the *Strickland* test must be met to demonstrate
ineffective assistance. *Id*. at 687, 697. In applying this
standard, a court must indulge a strong presumption that
counsel's conduct fell within the wide range of reasonable
professional assistance or sound trial strategy. *Id*. at 668, 688-
89. Judicial scrutiny of counsel's performance must be highly
deferential and every effort must be made to eliminate the
distorting effects of hindsight. *Id*. at 689. The Supreme Court
emphasized in *Harrington v. Richter* that

> [t]he pivotal question is whether the state court's
> application of the *Strickland* standard was
> unreasonable. This is different from asking whether
> defense counsel's performance fell below *Strickland*'s
> standard. Were that the inquiry, the analysis would be
> no different than if, for example, this Court were
> adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court.
> Under AEDPA, though, it is a necessary premise that the
> two questions are different. For purposes of §
> 2254(d)(1), "an *unreasonable* application of federal law
> is different from an *incorrect* application of federal
> law." A state court must be granted a deference and
> latitude that are not in operation when the case
> involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410
(2000)) (emphasis in original). Accordingly, it is necessary only

to determine whether the state courts' adjudication of petitioner's ineffective-assistance claims is contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Petitioner claims that his trial counsel, Abe Factor and Clay Graham, were ineffective by failing to object to a defective and insufficient indictment; opening the door to extraneous offense evidence and failing to "limit or exclude" the evidence; and failing to consult and call as a witness a medical expert. (Pet. 6-7a, doc. 1.)

Abe Factor, an experienced attorney who is board certified in criminal law, responded to petitioner's allegations in an affidavit filed in the state habeas proceedings:

> I was retained to represent [petitioner] for the trial of his continuous sexual abuse of a child case before Judge Robb Catalano in Criminal District Court Number Three of Tarrant County. The trial to the jury took place on February 4, 5, 6 & 7, 2013. As relevant to the Grounds alleged in [petitioner]'s Application, during the guilt phase of the trial, the judge admitted over objection the testimony of one of [petitioner]'s former stepchildren, [Sarah]. Her testimony detailed the sexual abuse she suffered at the hands of [petitioner] which took place in 1997 and 1998, when she was seven or eight years old. Her extraneous offense evidence was admitted pursuant to the State's argument that the Defense had "opened the door" and in order to show opportunity, motive, design, plan, intent, preparation, knowledge or absence of mistake or accident. The jury ultimately found [petitioner] guilty as charged in the indictment, and sentenced him to Life

imprisonment.

[Petitioner] complains in Ground numbers Three, Four and Five of his Writ Application that I provided ineffective assistance of counsel.

In reference to Ground Number Three of [petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:

[Petitioner] complains that I "failed to object to a defective and insufficient indictment. However, the record shows that prior to trial, I filed a motion to quash indictment. That motion was heard and denied by the trial court on February 4, 2013.

In reference to Ground Number Four of [petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:

[Petitioner] complains that I "opened the door to extraneous offense evidence during opening argument." The record shows that I did not give the opening statement for the defense. However, the State's opening statement informed the jury that the two complainants would testify to the sexual abuse they were subjected to by [petitioner]. The jury was also informed that [petitioner]'s son would corroborate the peculiar sleeping arrangements which facilitated the alleged abuse.

Prior to trial, the defense was able to gather a very accurate idea of the evidence which the state would be able to present at trial. Being aware of the volume and impact of the State's evidence, the defense made a strategic decision not to reserve our opening. Rather, we determined that not giving an opening statement would leave the jury without a defense-oriented prism though [sic] which to view the upcoming State's extensive, impactful and damaging evidence. In my professional opinion, the risk of opening the door to an extraneous offense was only moderate, but that reserving our opening statement-or not mounting some type of alternative theory to the State's opening argument-would be more damaging to the defense in the long run.

Moreover, I disagreed at the time, and still

disagree, with the trial court's ruling that the door had even been opened to the extraneous offense evidence. In fact, in ruling on the point of error regarding the admission of the extraneous evidence, the Second Court of Appeals did not affirmatively find that the "door had been opened," but merely held that the trial court had not abused its discretion in finding so.

Finally, contrary to [petitioner]'s claim in his application, the extraneous offense evidence did not noticeably change the calculus for the jury. This is because the testimony of the complainants in the charged offense was powerful and direct. The State's quantum of evidence was more than enough to allow a jury to convict [petitioner]. The extraneous offense testimony can accurately be characterized as merely piling on; the State presented overwhelming evidence of [petitioner]'s guilt to the jury.

In reference to Ground Number Five of [petitioner]'s Application for Writ of Habeas Corpus, I respond as follows:

[Petitioner] complains that I failed to lodge a Rule 403 objection to the extraneous offense evidence. I made a strategic decision to object to the extraneous offense evidence only on the grounds that the door had not been opened by the defense. In my professional opinion, the "unopened door" objection was powerful in itself, and that to throw a hodgepodge assortment of objections out to the trial court would in effect water down our very potent objection and dissipate the focus from our stronger argument. Further, the trial court would have almost certainly overruled any objection grounded on Rule 403. Rule 403 carries with it a presumption that relevant evidence will be more probative than prejudicial. As argued by the State and found by the trial court, Texas law holds that extraneous offense evidence is probative to show opportunity, motive, design, plan, intent, preparation, knowledge or absence of mistake or accident.

Moreover, evidence is only subject to exclusion under Rule 403 if it is more unfairly prejudicial than probative. This is because almost all evidence offered by the State will be prejudicial to the accused. Though the extraneous offense evidence was detrimental to the

defense, it was probative evidence in the instant case as found by the trial court.

Moreover, contrary to [petitioner]'s claim in his Application, the extraneous offense evidence was not emphasized by the parties. The State made only a single reference [to] the extraneous offense evidence in its closing argument. The defense closing made two fleeting mentions of the extraneous offense evidence.

Additionally, even had the unlikely exclusion of the extraneous offense evidence on 403 grounds come to pass, the result of the trial would most assuredly not have been different. The State's direct evidence in the form of the two young girls was compelling; during the course of each girl's testimony it was clear that the members of the jury were deeply engaged by evidence they were hearing. The complainants' testimony alone was more than sufficient to prove every element of the State's case.

In addition to the two girls' testimony however, the State presented evidence of each of the complainants' outcry testimony and forensic interviews, which only reinforced and corroborated what the members of the jury had heard from the girls themselves. Further, the State presented the corroborating testimony of the police detective who had discovered the vibrator in [petitioner]'s home, which—according to the evidence-[petitioner] had used on one of the complainants during a molestation episode.

Finally, the extraneous offense evidence had no effect on the Life sentence assessed by the jury. During the punishment phase, the State presented the testimony of one of [petitioner]'s biological children, three of his former stepchildren, and the daughter of a woman he once dated, each of whom informed the jury in detail of the sexual assault, sexual abuse and molestation inflicted upon them by [petitioner] when they were young children. The impact of the State's punishment phase testimony cannot be understated; at one point in the proceedings every juror was crying as the witness testified to the sexual abuse she endured at the hands of [petitioner]. By the time the jury came to consider both the guilt and the appropriate sentence for [petitioner], in my professional opinion it wasn't the extraneous offense evidence that occupied the minds

of the jury.

(State Habeas R. 59-63, doc. 18-22 (footnotes and citations to the record omitted.) Graham filed a nearly identical affidavit in response to petitioner's allegations, which is not reproduced here.

The state habeas judge, who also presided at petitioner's trial, found counsel's affidavits credible and supported by the record and adopted the state's proposed factual findings on the issue, too numerous to list here, refuting petitioner's claims. (*Id.* at 81-84.) The court also adopted factual findings that there was no evidence that a medical expert "would have testified that the lack of any sign of sexual abuse means that the victim was not sexually abused" or "would have described the impossibility of the alleged victims having been sexually abused." (*Id.* at 83.) Applying *Strickland* to the totality of counsel's representation, the state court concluded that counsel properly attacked the indictment through a motion to quash and properly objected to the indictment on the basis that it failed to allege the specific manner and means of the offense. (*Id.* at 87.) The court also concluded that counsel's decisions to risk opening the door to the extraneous offense evidence and not to object to the extraneous offense evidence under rule 403 were the result of reasonable trial strategy and that counsel's request for a limiting instruction was proper. (*Id.* at 87.) Finally, the

court concluded that petitioner failed to prove that counsel's representation was deficient because they did not interview and call a medical expert. In all, the court concluded that petitioner failed to prove that counsel's representation fell below an objective standard of reasonableness or that there existed a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his trial would have been different. *(Id.* at 88-89.)

Relying on the presumptive correctness of the state courts' factual findings, and having independently reviewed petitioner's claims in conjunction with the state court records, the state courts' adjudication of the claims is not contrary to or an unreasonable application of *Strickland.* Petitioner's claims are largely conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to

16

raise a constitutional issue"); *Evans v. Cockrell,* 285 F.3d 370, 377-78 (5th Cir.2002) (rejecting uncalled expert witness claim where petitioner failed to present evidence of what a scientific expert would have stated).

### C. Extraneous Offense Evidence

Petitioner claims the trial court erred by admitting or improperly admitting extraneous offense evidence in the form of testimony from a prior child victim of petitioner's for all purposes. (Pet. 7a, doc. 1.) Relying solely on state law, the state appellate court addressed the issue as follows:

> [Petitioner] contends that the trial court abused its discretion by admitting evidence of an extraneous offense during the guilt phase of his trial. "The admission of evidence is a matter within the discretion of the trial court. Absent an abuse of discretion, we will not disturb a trial court's ruling on the admissibility of extraneous offense evidence." As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we must uphold the ruling.
>
> The State, as the proponent for extraneous offense evidence, has the burden of showing admissibility. We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.
>
> Toward the end of its case, the State informed the trial court that it desired to present evidence of another incident of sexual abuse committed by [petitioner] to rebut his defensive theories that Danielle had made up the allegations against him, that the girls had conspired against him, and that Cara may have been sexually inappropriate with a boy that she knew rather than [petitioner]. The State contended that the extraneous offense testimony would show that the allegations by Cara and Danielle were not a "frame up." Although the State suggested that it knew of six other

sexual abuse victims by [petitioner], it proposed to elicit testimony from only the victim with the "closest scenario to the type of abuse that occurred" with Cara and Danielle. The State explained that the proposed testimony would come from a victim, Susan, who did not know Cara or Danielle and therefore could not have been part of their alleged conspiracy against [petitioner].

[Petitioner] objected to the admission of the extraneous offense testimony, arguing that the offense was remote in time, that the defense had not "propounded much of a defensive theory," and that the State therefore had nothing to rebut. [Petitioner]'s counsel argued that [petitioner] had "not in any way, shape, or form suggested that [he] never . . . had other victims or that . . . his character [was] sterling." In reply, the State contended that the evidence was also admissible to show [petitioner]'s opportunity to commit the offense and to rebut his stance that he could not have committed the offenses with other people nearby.

In Susan's testimony outside of the jury's presence, she stated that she was twenty-two years old; that when she was seven to eight years old, her mother was married to [petitioner]; that she and her siblings therefore lived with [petitioner]; and that more than once while she was sleeping in a bed between her mother and appellant, he touched her bottom and vagina underneath her clothes with his fingers. The trial court overruled [petitioner]'s objection to Susan's testimony and allowed her to testify in front of the jury after giving the following instruction:

> [T]he Defendant is on trial solely for the charge that's contained in the indictment.
>
> And in reference to any evidence from the next witness, you are instructed that before you may consider such evidence, you must believe . . . beyond a reasonable doubt that any of the said acts were committed. And even then, you may only consider such evidence to assist you, if it does, in understanding whether or not this evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.

Susan testified about the same facts in front of the jury and added that she had never met Danielle or Cara.

On appeal, [petitioner] contends that Susan's testimony was inadmissible under rule of evidence 404(b) because he had not advanced a defensive theory, because witnesses had denied that they had conspired against [petitioner], and because Cara had testified that nothing had happened with the boy that she knew. [Petitioner] appears to argue that Susan's testimony had no relevance other than character conformity.

Evidence of crimes, wrongs, or acts for which the defendant is not on trial "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *Powell* [*v. State,* 63 S.W.3d 435 (Tex. App.-Fort Worth 2011, pet. ref'd)], during a trial for indecency with a child, the State presented evidence that Powell had sexually molested the victim—a young female—on numerous occasions in his living room while other people were sleeping in the room. Powell contended in his opening statement and through cross-examination of the victim that he could not have had the opportunity to molest the victim with others present in the same room. In response, the State offered extraneous offense evidence from several witnesses who testified that appellant had molested them under circumstances similar to those the victim had described. The court of criminal appeals held that the trial court had not abused its discretion by admitting evidence of the extraneous crimes because the evidence rebutted Powell's defensive theory "that he had no opportunity to commit the offense because he was never alone" with the victim. And the court expressly concluded that a trial court may have the discretion to allow extraneous offense evidence in response to an argument made in a defendant's opening statement.

In a similar case decided two months after *Powell,* the court of criminal appeals again held that extraneous offense evidence was admissible to rebut a defendant's claim that he did not have the opportunity to commit a sexual crime with the victim while other

people were in the same room.

Here, the State explained in its opening argument that the evidence would show that [petitioner] molested Cara and Daniele on a couch where he slept. During [petitioner]'s opening statement, he contended in part,

> This was not something hidden away in the closet, in the back room, the doors locked, and the music turned up. This is something they are alleging happened in the one big downstairs room where anyone could come in and see it. It just does not add up.
>
> [There are] even allegations that something occurred with [Danielle] and [petitioner] *while the other children were on the floor asleep.*
>
> .  .  .  .
>
> I believe you're going to have doubts that are reasonable about the mechanisms of this encounter, the situation, [and] the circumstances surrounding it.

[Petitioner]'s cross-examinations of Christopher and Cara focused in part on sleeping arrangements on the couch and whether there were occasions when Cara, Beth, and Danielle had all slept in the living room together.

We conclude that [petitioner]'s opening statement raised a contention that he did not have an opportunity to sexually abuse Cara or Danielle in the living room because someone else was in the house, including other children who slept in that room and could have observed him doing so. [Petitioner]'s cross-examinations of Christopher and Cara appear to have been partly directed at supporting that contention. Thus, the trial court could have reasonably found that Susan's testimony, which concerned [petitioner]'s abuse of her while her mother was sleeping next to her in the same bed, rebutted [petitioner]'s contention by proving that his opportunity to abuse Cara and Danielle was not negated by their physical proximity to other people or the chance of discovery by those people.

> It is at least subject to reasonable disagreement
> whether Susan's testimony about an extraneous offense
> was admissible for the noncharacter-conformity purpose
> of rebutting [petitioner]'s contention that he could
> not have had an opportunity to sexually abuse Cara and
> Danielle with other people in or near the same room.
> Therefore, we hold that the trial court did not abuse
> its discretion by admitting Susan's testimony,

(Mem. Op. 7-14, doc. 18-3 (citations omitted) (emphasis in original).)

A state court's evidentiary rulings are not inherently suspect and are generally not cognizable on federal habeas review of a state conviction. *See Estelle v. McGuire,* 502, U.S. 62, 67 (1991); *Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007); *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1983). A federal habeas court will disturb state court evidentiary rulings on habeas review only if they render the trial fundamentally unfair. *Payne v. Tennessee,* 501 U.S. 808, 825 (1991). Although petitioner does not expressly assert a due process claim, his challenge implicates his rights under the Due Process Clause. The admission of extraneous offense evidence does not violate due process if the state "makes a strong showing that the defendant committed the offense and if the extraneous offense is rationally connected with the offense charged." *Wood,* 503 F.3d at 414. Offenses may be rationally related, even if they involve different victims and occurred at different times, if the offenses have "striking similarities." *Id.* at 415.

Here, assuming the jury believed the state's witnesses, the

state made a strong showing that petitioner committed the offense and, contrary to his assertion, petitioner's sexual abuse of Susan as a child bears a rational relationship to the offense charged. Additionally, the jury was given both a contemporaneous limiting instruction for its consideration and use of the evidence at the time it was admitted and a limiting instruction in the jury charge. (Reporter's R., vol. 4, 296, doc. 18-8; Clerk's R. 154, doc. 18-11.) Given these circumstances, petitioner cannot demonstrate that his trial was rendered fundamentally unfair as a result of admission of the evidence. Consequently, the state appellate court found that the evidence was admissible as a matter of state law, and this court may not revisit that finding.

### D. Jury Argument

Petitioner claims the prosecution twice improperly commented on his failure to testify during closing argument and "explicitly used that failure as evidence of guilt." (Pet. 7a, doc. 1.) Petitioner raised this claim in the context of trial-court error on appeal, and the state appellate court addressed the issue as follows:

> [Petitioner] contends that the trial court abused its discretion by denying his motion for mistrial that was based on the State's alleged comments on his decision to not testify. In the State's closing argument on [petitioner]'s guilt, the following exchange occurred:
>
> [THE STATE:] This grown man made the

decision and the choices to violate these children and now wants to stand here before you and say that he didn't do it.

[DEFENSE COUNSEL]: Objection. That's [a] comment on his failure to testify. I object.

[THE STATE]: Your Honor, he pled not guilty.

[DEFENSE COUNSEL]: I object. I object. That's [a] comment on his failure to testify.

THE COURT: Overruled.

[THE STATE]: He is not taking responsibility.

[DEFENSE COUNSEL]: Continued objection. May I have a running objection, Your Honor?

THE COURT: You may.

[THE STATE]: He's guilty. You know he's guilty.

Although the trial court had initially overruled [petitioner]'s objection, it later sustained the objection "as to the statement . . . regarding [petitioner] saying he didn't do it" and instructed the jury to disregard that argument. The court then denied [petitioner]'s request for a mistrial.

We review the trial court's denial of a motion for mistrial for an abuse of discretion. "When the refusal to grant a mistrial follows an objection for improper jury argument, we balance three factors to determine whether the trial court abused its discretion: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct." Only in extreme circumstances, when the prejudice caused by an improper argument is so incurable that expenditure of further time and expense would be wasteful and futile, will a mistrial be required.

The State cannot "comment on the failure of an accused to testify. Such a comment violates the

privilege against self-incrimination and the freedom
from being compelled to testify contained in the Fifth
Amendment of the United States Constitution and Article
I, § 10, of the Texas Constitution." To violate the
defendant's right against compelled self-incrimination,
however, the

> offending language must be viewed from the
> jury's standpoint and the implication that
> the comment referred to the defendant's
> failure to testify must be clear. It is not
> sufficient that the language might be
> construed as an implied or indirect allusion.
> The test is whether the language used was
> manifestly intended or was of such a
> character that the jury would necessarily and
> naturally take it as a comment on the
> defendant's failure to testify.

A mere indirect or implied allusion to the accused's
failure to testify does not violate the accused's right
to remain silent.

The first part of the State's objected-to
argument, in which the prosecutor stated that
[petitioner] wanted to "stand . . . before [the jury]
and say that he didn't do it," appears to refer not to
inaction or avoidance (such as not testifying) on
[petitioner]'s part but to affirmative action in
contesting the charge (such as the denial of the
offense in his opening statement). Thus, we cannot
conclude that the first part of the State's argument
was improper; it did not necessarily and naturally
refer to [petitioner]'s decision to not testify.

The second part of the argument, when the
prosecutor said that [petitioner] was "not taking
responsibility" for the offense, could have intended to
summarize testimony from Lacy (Danielle's mother) that
[petitioner] had denied committing the offense upon
being confronted. We are concerned, however, that the
present-tense delivery of the argument—"He is not
taking responsibility"—may have focused the jury upon
[petitioner]'s decision to not discuss the offense
through his testimony at trial.

To the extent that the second part of the State's
argument may have been improper, we cannot conclude

that the trial court abused its discretion by denying [petitioner]'s motion for mistrial based on the statement. After stating the second part of the argument quoted above, the prosecutor did not discuss [petitioner]'s refusal to take responsibility at any other point. Instead, the parts of the State's argument that preceded and followed the excerpt above discussed the jury's ability to convict based on the children's testimony alone, details of their testimony and their pretrial statements, evidence that supported their testimony, explanations for inconsistencies in testimony, [petitioner]'s unsupervised access to the children, and the elements of section 21.02. The embedding of one possibly improper remark within many other proper arguments that invited the jury to draw legitimate inferences of [petitioner]'s guilt persuades us that the trial court did not abuse its discretion by denying a mistrial.

Next, the trial court instructed the jury before voir dire and again in the jury charge that [petitioner]'s decision to not testify could not be considered for any purpose. We generally presume that the jury followed such cautionary instructions. We cannot conclude that the State's comment in this case was "so indelible that the jury would simply ignore the trial court's specific and timely instruction" to not consider [petitioner]'s decision to not testify as a factor against him.

Finally, we conclude that the evidence was compelling enough to make the conviction certain without the comment. The jury heard Cara's and Danielle's statements at the time of their outcries and their testimonies at trial, in which they explicitly described [petitioner]'s acts of sexual abuse against them. Also, the jury received evidence corroborating Cara's and Danielle's claims against [petitioner], such as Christopher's testimony that the girls routinely spent the night at [petitioner]'s home and sometimes lay next to [petitioner] on a couch, a police officer's testimony that he found a vibrator in the home (after Cara had testified that petitioner had placed a vibrator on her sexual organ), Lacy's testimony that petitioner bought expensive gifts for the girls (which suggested his inappropriate relationship with them), and Lacy's testimony that petitioner begged her to not call the police and offered to surrender possession of

his children if she did not do so. [I]t "seems unlikely
that the jury would have ignored the court's explicit
instructions and convicted the [petitioner], not on the
compelling evidence introduced against him, but because
he failed to take the witness stand to explain
himself."

For all of these reasons, after considering the
State's permissible comment and the possibly improper
comment in context with the entire record, we conclude
that the trial court did not abuse its discretion by
denying [petitioner]'s motion for mistrial. The
possibly improper comment was not so prejudicial that
expenditure of further time would have been wasteful
and futile.

(Mem. Op. 14-20, doc. 18-3.)

The Fifth Amendment forbids comment by the prosecution on an

accused's silence. *Griffin v. California,* 380 U.S. 609, 615

(1965). Such error is subject to harmless-error analysis. *Chapman*

*v. California,* 386 U.S. 18, 25 (1967). The test for harmless

error in habeas proceedings is "whether the error 'had

substantial and injurious effect or influence in determining the

jury's verdict'" in the context of the entire record. *Brecht v.*

*Abrahamson,* 507 U.S. 619, 623 (1993). This court is satisfied

that the state court's conclusion is neither contrary to, nor an

unreasonable application of, Supreme Court precedent, and, for

the reasons stated by that court, cannot conclude that the one

improper comment had a substantial and injurious effect or

influence in determining the jury's verdict, given the strength

of the evidence against petitioner.

26

### E. Cumulative Errors

Lastly, petitioner claims the cumulative effect of the combined errors deprived him of a fair trial. (Pet. 7a, doc. 1.) Citing only to state case law, the state habeas court entered the following legal conclusions regarding this claim:

46. "[A] number of errors may be found harmful in their cumulative effect" even if harmless individually.

47. There is "no authority holding that non-errors may in their cumulative effect cause error."

48. [Petitioner] has failed to prove that errors occurred that are harmful in their cumulative effect.

(State Habeas R. 90, doc. 18-22.)

Cumulative error in habeas corpus review is a narrow and rare form of a due process violation. *See Derden v. McNeel,* 978 F.2d 1453, 1461 (1992). In order to satisfy the cumulative-error rule in the Fifth Circuit, a federal habeas petitioner must show that (1) errors occurred during the petitioner's state trial court proceeding, (2) the errors are not procedurally barred, (3) the errors rise to the level of constitutional deprivations, and (4) the record as a whole reveals that an unfair trial resulted from those errors. *Westley v. Johnson,* 83 F.3d 714, 726 (5th Cir. 1996); *Derden,* 978 F.2d at 1458. As this court's discussion of petitioner's claims set forth above makes clear, the alleged errors identified by petitioner, whether considered individually or cumulatively, did not assume constitutional significance or by no means rendered his trial fundamentally unfair. Thus,

cumulative error is not applicable to the facts before this court.

## V. CONCLUSION

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED January **3 1**, 2018.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE